THE STATE, JESSE R. LEEDS, PROSECUTOR, v. THE MAYOR
AND CITY COUNCIL OF ATLANTIC CITY AND ALANTIC
CITY, DEFENDANTS.

1. When an office is full *de facto* of a person claiming it under color of
right, the proper remedy to test the claimant's title is *quo warranto*,
and not *mandamus*.

2. An office is deemed to be full *de facto* whenever a person elected has
been admitted to it, notwithstanding the election may, upon legal
grounds, turn out to be invalid; provided, such election is consistent
with an honest misapprehension of the law, and not evidence of a pal-
pable disregard of its provisions.

3. When a relator in office *de jure et de facto* is interfered with by one
whose lack of title *de jure* is *res judicata*, *mandamus*, and not *quo war-
ranto*, is the proper remedy.

4. Where a *mandamus* is applied for to compel a corporation to restore
relator to an office to which he is *prima facie* entitled, the incumbent
is not a necessary party to the allowance of a peremptory *mandamus*.

On rule for *mandamus*.

Argued at November Term, 1889, before Justices VAN
SYCKEL, MAGIE and GARRISON.

For the relator, *J. W. Wescott.*

For the defendants, *A. B. Endicott.*

The opinion of the court was delivered by

GARRISON, J.    This cause is before us upon a rule for a
*mandamus*. The facts are, briefly, these : The relator was
elected sergeant of police in Atlantic City at a meeting of city
council held November 24th, 1885. He took the prescribed
oath of office and entered upon his official duties. At a meet-
ing of city council held November 23d, 1886, the office thus
held by the relator was, upon motion, declared vacant, and an
election held to fill the same, which resulted in the selection
of one Samuel Loder, who was thereupon declared elected

" Sergeant of police instead of Jesse R. Leeds, removed," since which time the said Loder has performed the duties of the office, with the concurrence of the city authorities, who declined to recognize the relator, notwithstanding his refusal to surrender his equipments and his occasional performance of official duty. These proceedings of city council, in so far as they resulted in the removal of the relator, were carried by him into this court by *certiorari*, and were here set aside as being in contravention of the provisions of "An act respecting police departments of cities, and regulating the tenure of office of officers and men employed in said departments," and the supplement thereto. *Pamph. L.* 1886, *p.* 48. The action of city council by which relator was removed from his office having thus been declared illegal, he now asks for a writ of *mandamus* to compel the city to restore him to the duties and privileges of his said office. The rule, which is directed against the municipality alone, is by it opposed upon four grounds :

1. That *mandamus* is not the proper remedy.
2. That the present incumbent is a necessary party.
3. That relator served the full term for which he was elected..
4. Because he accepted his discharge.

In considering these objections in their inverse order, it is sufficient to say of the last one, that it is not sustained by the proofs, and of the third, that it is *res judicata*. The first and second reasons have more substance, and may be dealt with together.

The contention raised is, that *quo warranto* and not *mandamus* is the proper remedy in the present case.

The appropriate use of these remedies in cases of amotion from public office has been a fruitful source of discussion, and the result, so far as the American cases are concerned, is a contrariety of judicial opinion and practice.

At an early period it was established by the Court of King's Bench, that *quo warranto* and not *mandamus* was the proper remedy when the office was full *de facto*. *Rex* v. *The Mayor of Colchester*, 2 *T. R.* 259 ; *Rex* v. *The Mayor of*

*York,* 4 *Id.* 699 ; *Rex* v. *The Mayor of Oxford,* 6 *Ad. & E.*
:349.

It is likewise to be gathered from the English cases, that
an office is deemed full *de facto* whenever a person elected has
been admitted to it, whether the election was or was not of
such a character that it could be supported at law. Thus, in
the case of Rex *v.* Lisle, which is reported at length by An-
drews and briefly by Strange, it is said : "In order to consti-
tute a man an officer *de facto,* there must be at least the form
of an election, though that, upon legal objections, may after-
wards fall to the ground." *Andr.* 163 ; *Str.* 1090.

The language of Wightman, J., in *Frost* v. *Mayor of Ches-
ter,* 5 *El. & B.* 531, which was an application for a *manda-
mus,* presents the views of the same court at a later period.
"We may assume," he says, "that the office is not full *de
jure,* but only *de facto,* and, for the purpose of the present
argument, we may assume that the election has been holden in
a way not warranted by law, and is therefore bad, and, as such,
could not be supported on *quo warranto.* But the office is
not the less full *de facto,* and the party elected has been
admitted." To the same effect were the opinions of Cole-
ridge, J., and Chief Justice Campbell, in the same case, the
court being unanimous that where an office was thus full, *quo
warranto* and not *mandamus* was the remedy.

But, while it is true that the illegality of the election, by
virtue of which an incumbent has gained entrance to an office,
does not prevent the office from being full of him *de facto,* it
is also to be noted, that from the earliest periods it has been
held requisite that the illegality in question must be consist-
ent with honesty of purpose. Elections based upon mistakes
of fact or misconceptions of law may impart a color of right
which will bar the allowance of a *mandamus,* but palpable
disregard of law renders the action by which an office is
seized merely colorable, and, in a clear case, will be brushed
aside as affording no obstruction to the exercise of a plain
legal duty.

Thus, in *Rex* v. *Bankes*, 3 *Burr.* 1452, Lord Mansfield proposed, upon the argument, that affidavits be laid before him, that he might determine whether it was a doubtful election, and fit to be tried upon an information in the nature of a *quo warranto*, or whether it was merely colorable and clearly void, saying, that in the former case the court might not grant a *mandamus*, while in the latter case they ought. And, from a note by Burrows, it appears that Lord Hardwicke, in *Rex* v. *Holmes, H.* 9, *G. II., B. R.*, cites the *Case of Tintagel, H.* 8, *G. II., B. R.*, as the first case in which a *mandamus* had been granted under such circumstances, adding, as if in apology, that it had been done because it was "a quite clear case." See, also, *Rex* v. *Mayor of Cambridge*, 4 *Burr.* 2008.

The distinction thus early indicated has become incorporated in the modern English rule upon this subject, which is stated by Mr. Shortt (*Shortt Mand.* 122) as follows: "Whenever the office is full *de facto*, the proper method of proceeding is by *quo warranto* to oust the occupant, if he is not in possession *de jure*. And the office is full *de facto* though the election to it was illegal, provided it was a real, and not merely a colorable, election. If, on the other hand, the election was merely colorable, so as to be really no election at all, it does not confer even a *de facto* possession, and the remedy of the person ousted by it is not *quo warranto*, but *mandamus*."

In this country, the courts of New York have adopted the English rule without substantial change. In the leading case, however, an additional reason is given, viz., that the corporation, being a third party, may admit, or not, at pleasure, and the rights of the party in office may be injured. *Drake* v. *New York*, 3 *Johns. Cas.* 79.

This is obviously rather a matter of practice than an error in principle.

So, in the later cases, we find the writ refused upon grounds adopted from the English cases. *Dolan* v. *Lane*, 55 *N. Y.* 217; *Matter of Gardner*, 68 *Id.* 467; *People* v. *Ferris*, 76

*Id.* 326. A similar course obtains in Connecticut. *Duane* v. *McDonald*, 41 *Conn.* 517.

On the contrary, other state courts, notably those of Massachusetts, have relaxed the rigidity of the rule, and, to a certain extent, permit the right to an office actually filled to be raised upon an alternative *mandamus*. *Strong, Petitioner*, 20 *Pick.* 484; *Ellis* v. *Bristol*, 2 *Gray* 370; *Conlin* v. *Aldrich,.* 98 *Mass.* 557; *Putnam* v. *Langley*, 133 *Id.* 204; *Dew* v.. *The Judges*, 3 *Hen. & Mun.* 1.

The rule, as it obtains at present in the various states, will be found, with citations of numerous cases, in *Ang. & A. Corp.,.* § 702 *et seq.*

In this state, so far as any expression of judicial sentiment is to be found, it is favorable to retaining the distinction upon which the English rule is founded—*i. e.*, that *quo warranto* and not *mandamus* is the remedy in all cases in which an office is full *de facto*, excepting only those cases in which the office has been filled by proceedings palpably without legal warrant. *Hoboken* v. *Gear*, 3 *Dutcher* 265; *McDermott* v. *Miller*, 16 *Vroom* 251; *Bradshaw* v. *Camden*, 10 *Id.* 416; *Henry* v. *Camden*, 13 *Id.* 335.

There are, in particular, two cases in which this court has evidently proceeded upon this view of the rule of law. In *Mason* v. *Mayor of Paterson*, 6 *Vroom* 190, the office of city treasurer could, under the city charter, be filled only by a. majority meeting of the board of aldermen. The defendant, who had been admitted to the office by an election in which. less than a legal number of aldermen were present, claimed, against the relator's application for a *mandamus*, that, as he was in office *de facto* and under color of an election, *quo warranto* and not *mandamus* was the proper remedy. The court held, however, that the election by the aldermen, in violation of their own organic law, was merely colorable, and, all the facts being before the court, a peremptory *mandamus* went in the first instance.

In *Lewis* v. *Jersey City*, 22 *Vroom* 240, the discharge of a. person under a debatable construction of a recent legislative

enactment, and the filling of his position, did not prevent the allowance of a peremptory *mandamus* for his restoration to office. All of the facts necessary for the determination of the legality of his discharge appear to have been before the court on the rule to show cause, and the propriety of the proposed remedy does not seem to have been questioned, nor does the reported case show that the imcumbent was a party to the proceedings.

The present case possesses elements of strength for the relator not to be found in the reported cases, in that it is *res judicata*, that his removal from office was illegal.

The authority of these two cases would appear to be conclusive upon the relator's right to a peremptory *mandamus* restoring him to his office.

There is, however, an aspect of this case which, while it leads to the same result, appears to me more surely consonant with the rule of law which we seem to have adopted.

That rule, in its rigidity, is applicable to cases only in which a relator clearly out of office *de facto* is seeking to oust an incumbent who is clearly in. In such cases, the reason for the rule makes the fullness of the office *de facto* the test as to whether *quo warranto* is or is not the only remedy.

There is, however, a class of cases in which this reason for the rule is wanting. I refer to those cases in which the facts before the court, or within its judicial knowledge, show that the relator was in office *de jure et de facto*, and that the defendant, while claiming to be in *de facto*, can make no claim to be in *de jure*. Here the relator is not called upon to test the title to the office, for that is not in dispute. The office is not *de facto* full against him, unless by his conduct he elect to consider himself out. In contemplation of law, his title to the office *de jure* draws to it the possession *de facto*, as in cases where simultaneous acts of occupancy are exercised by contestants over a legal title. In such cases there is nothing to be tried by *quo warranto*. The law being settled, and the facts undisputed, the duty of the court is clear. *The People* v. *Scrugham*, 20 *Barb.* 302, presents such a state of facts, and

is directly in point. This case was subsequently reversed, but not upon the grounds for which it is here cited.

In the case in hand, this court has, upon *certiorari,* annulled the only thing which challenged the relator's right to this office. The testimony taken under this rule shows that the relator was in office at the time of the unlawful attempt at his amotion, and that he has not elected to consider himself out. Under these circumstances, the municipality can interpose no objection to the proposed *mandamus.*

The only remaining question, is the right of the defendant municipality to object to this application because the incumbent is not a party to it.

The incumbent of an office is undoubtedly a necessary party to proceedings brought for the purpose of testing his title thereto.

By the *certiorari* suit it was decided that, at the time of the appointment of the incumbent, there existed no legal vacancy in the office he still purports to fill.

Without discussing the questions which might have arisen if the incumbent himself had made application to be made a party to the *certiorari,* it is sufficient for present purpose, to say, that the defendant cannot now avail itself of the non-joinder of the incumbent in the proceeding now before us.

As to the city of Atlantic City, the *prima facie* right of this relator to be admitted to this office is *res judicata.*

A peremptory *mandamus* will be allowed.